KIMMEL & SILVERMAN, PC
Jacob U. Ginsburg, Esq. (NJ 039312011)
30 East Butler Ave.
Ambler, Pennsylvania 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VINCAGE**

| | |
|---|---|
| **BRIAN MCBRIDE and DEBORAH BLISSICK**, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>**BETTER TAX RELIEF, LLC, BETTER RISE CAPITAL LLC, BETTER COMPANIES LLC and MATT NIA,**<br><br>*Defendants.* | Case No.:<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

**CLASS-ACTION COMPLAINT**

Plaintiffs Brian McBride ("McBride") and Deborah Blissick ("Blissick", collectively "Plaintiffs"), individually and on behalf of all others similarly situated, file this Class-Action Complaint against Defendants Better Tax Relief, LLC ("Better Tax Relief"), Better Rise Capital, LLC ("Better Rise Capital") Better Companies, LLC ("Better Companies") and Matt Nia ("Nia", collectively "Defendants"). In support thereof, Plaintiffs state as follows:

**NATURE OF THE CASE**

1. Plaintiffs bring this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful

actions of Defendants. Defendants violated Plaintiffs and the putative class-members' rights by making two or more solicitation calls to residential subscribers whose numbers were registered on the Do Not Call Registry, and by placing ringless, pre-recorded voicemails to consumers without their prior express consent. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. and the TCPA's corresponding regulations promulgated by the Federal Communications Commission ("FCC") at 47 C.F.R. § 64.1200 *et seq.*

**BACKGROUND ON THE TCPA**

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights – specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did

not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 30 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3).

8. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019,

https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. Plaintiffs received the unwanted telemarketing calls at issue in this lawsuit while physically present in New Jersey, the state in which they are residents and taxpayers.

13. Defendants Better Tax Relief, Better Companies, and Matt Nia ("the Better Tax Relief Defendants") were offering tax relief services and lending services in which they (falsely) claimed Plaintiffs were interested. By necessary implication, the Better Tax Relief Defendants knew the location of the taxpayer and prospective borrower, which is New Jersey.

14. Accordingly, the Better Tax Relief Defendants knowingly and purposefully availed themselves to the State of New Jersey by calling Plaintiffs, knowing they were New Jersey residents.

15. Furthermore, all Defendants placed numerous calls from New Jersey phone numbers, including but not limited to:

- (609) 849-3600;
- (609) 318-4626;
- (856) 795-1560;
- (201)-636-0430;
- (732) 338-7478;
- (551) 600-8140; and
- (908) 529-7293.

16. Therefore, Defendants placed many of the telemarketing calls from New Jersey.

17. A substantial part of the events and omissions giving rise to this claim occurred within this District.

18. Accordingly, personal jurisdiction exists and venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

19. Plaintiffs Brian McBride and Deborah Blissick are individuals who reside in Linwood, New Jersey.

20. Plaintiffs are each a "person" as that term is defined by 47 U.S.C. §153(39).

21. Defendant Better Tax Relief, LLC is a California company with its principal office address at 2525 Main Street #550, Irvine, California 92614.

22. Defendant Better Rise Capital LLC is a California company with its principal office address at 2525 Main Street #410, Irvine, California 92614.

23. Defendant Better Companies LLC is a California company with its principal office address at 2525 Main Street #500, Irvine, California 92614.

24. Upon information and belief, Better Tax Relief and Better Rise Capital are each a wholly-owned subsidiary of Better Companies. Better Companies, Better Tax Relief, and Better Rise Capital have common employees, officers and directors. The business operations of the companies overlap without distinction and therefore, the three companies worked in concert as a joint enterprise.

25. Defendant Matt Nia is an individual who resides in Newport Beach, California and is the co-founder and co-owner of Better Tax Relief.

26. Upon information and belief, Mr. Nia personally manages and directs the marketing activities of Better Tax Relief and its parent and sister companies.

27. Defendants are each a "person" as that term is defined by 47 U.S.C. §153(39).

28. Defendants acted through their employees, agents, vendors, contractors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees and representatives.

## FACTUAL ALLEGATIONS

### A. Factual Allegations as to McBride

29. At all times relevant hereto, Plaintiff Brian McBride owned a cell phone, the number for which was (312) XXX-2794.

30. At all times relevant hereto, McBride used that number primarily for personal and residential purposes, such as speaking with friends and family.

31. Furthermore, beginning in January of 2026, McBride's father entered hospice care, and McBride relied on the use of his cell phone to maintain contact with his father and his medical providers.

32. McBride registered that cell phone number on the National Do Not Call Registry on October 20, 2012 in order to obtain solitude from invasive and irritating telemarketing calls.

33. Beginning in June of 2025, Better Companies, Better Tax Relief, and Matt Nia ("the Better Tax Relief Defendants") began a telemarketing campaign to McBride, sending unsolicited and unconsented calls and voicemails promoting the Better Tax Relief Defendants' tax relief services which McBride did not want or need.

34. Because McBride would receive calls from unknown numbers relating to his father's medical care, he answered every incoming call he could, by necessity.

35. Therefore, the Better Tax Relief Defendants' calls were especially invasive and disruptive to McBride.

36. On June 20, 2025, McBride received a call from the number (828) 831-4025. He then received the following voicemail:

> This is Rebecca Molina, agent ID 20032 with the tax review unit. Your file still shows some back taxes or unfiled returns. You can press 1 to speak to your assigned tax specialist at any time. With the new administration putting extra funding into IRS relief programs to help families and avoid a deeper recession, your record shows that you qualify for something like the Fresh Start program, which helps significantly to lower what you owe or even help settle it completely, depending on your situation. Whenever you're free, call us, and a tax officer or someone from our team can walk you through this next step. My direct line is (877) 580-0362. To be removed from future calls, press 9. Looking forward to speaking with you soon.

37. Between June 2025 and the present date, McBride has received the same pre-recorded voicemail from various phone numbers on over two hundred occasions.

38. On some occasions, McBride' phone would not ring, and he would simply receive a voicemail from an unknown number.

39. On other occasions, McBride would also receive a phone call, followed by the voicemail.

40. A non-exhaustive list calls and/or "ringless voicemails" from the Better Tax Relief Defendants are attached as Exhibit A.

41. On January 28, 2026, in order to identify the party responsible for calling him, McBride called the (877) 580-0362 number left in the voicemail, inquiring who was calling and why.

42. Thereafter, McBride was connected with a call center representative who asked him a series of questions regarding his tax history before transferring him to another employee who asked him a similar series of questions. McBride then inquired into the identity of the company

that was offering him tax relief services, to which the agent responded by identifying "Better Tax Relief", located in Irvine, California.

43. After McBride received confirmation as to the identity of the company harassing him, he demanded the calls stop and ended the conversation.

44. Nonetheless, the calls from the Better Tax Relief Defendants continued.

45. On another occasion, after receiving an unwanted telemarketing call, on February 4, 2026, McBride directly called back the number that had most recently called and left the pre-recorded voicemail, and went through a substantially identical process as on January 28, 2026, with a representative who again identified himself as working for "Better Tax Relief."

46. McBride understands the voicemails were pre-recorded due to the impersonal and scripted cadence, tone, and language of the messages.

47. Furthermore, McBride was able to tell that the same entity (or conglomerate of entities) was responsible for all voicemails and calls from the fact that on all occasions, the voicemails have consisted of the exact same recording, with an identical script, voice, and delivery.

48. On February 6, 2026, as the Better Tax Relief Defendants' incessant calls continued to interfere with McBride's ability to use his phone and communicate with his father, McBride resorted to contacting the Irvine Police Department and requesting that a cease-and-desist order be conveyed to Matt Nia, the co-founder and co-owner of Better Tax Relief.

49. McBride received confirmation that Mr. Nia was found at Better Tax Relief's office address of 2525 Main Street, #550, Irvine, CA 92614 and that the cease-and-desist request was received by him.

50. Shortly thereafter, the Better Tax Relief Defendants' calls to McBride ceased.

51. Based on the foregoing, McBride was able to tell that the Better Tax Relief Defendants were responsible for all voicemails and calls.

52. Because Matt Nia clearly had the ability to stop the calls, McBride understands and therefore alleges he is responsible for the calls placed by the companies he owns and operates.

53. These calls and voicemails were not made for “emergency purposes,” but rather for solicitation purposes.

54. McBride did not have any pre-existing business relationship with the Better Tax Relief Defendants, and was not interested in tax relief services of any kind.

55. McBride did not provide the Better Tax Relief Defendants with his prior express consent to be contacted for solicitation purposes (or any purpose), or to receive pre-recorded voicemails.

56. The Better Tax Relief Defendants knew or should have known that their calls were unwanted because McBride’ phone was registered on the National Do-Not-Call Registry. The Better Tax Relief Defendants also knew the calls were unwanted because McBride told them as much on various occasions.

57. Furthermore, the Better Tax Relief Defendants took measures to prevent their calls from being blocked by calling from several different numbers.

58. As a result of the foregoing, McBride experienced frustration, annoyance, irritation and a sense that his privacy had been invaded by the Better Tax Relief Defendants. These harms were significantly enlarged during the months of January and February of 2026, when the Better Tax Relief Defendants’ incessant calls substantially interfered with McBride’s ability to maintain contact with his sick father and his medical providers.

**B. Factual Allegations as to Blissick**

59. Plaintiff Deborah Blissick is Plaintiff McBride's wife and resides with McBride in Linwood, New Jersey.

60. At all times relevant hereto, Blissick owned a cell phone, the number for which was (610) XXX-5574.

61. At all times relevant hereto, Blissick used that number primarily for personal and residential purposes, such as speaking with friends and family.

62. Blissick registered that cell phone number on the National Do Not Call Registry on April 16, 2005 in order to obtain solitude from invasive and irritating telemarketing calls.

63. Beginning in January of 2025, the Better Rise Capital Defendants began a telemarketing campaign to Blissick, sending unsolicited and unconsented calls and voicemails promoting the Better Rise Capital Defendants' money lending services which Blissick did not want or need.

64. On January 3, 2025, Blissick received a call from the number (484) 202-5072. She then received a voicemail which stated as follows:

> "This is Marina Tessio, I'm the credit analyst working on your approval and your business profile. I see that you had inquired before regarding a line of credit or business loans, and while it didn't move forward at the time, a few things have changed this year with rates and underwriting. If you're still interested in reviewing your options you can press 1 now or give us a call back. Today is Tuesday, I will be at my desk until 6pm. You can reach me at (855) 768-6335, I'll be happy to go over your terms with you, looking forward to speaking with you."

65. Between then and the present date, Blissick has received the same pre-recorded voicemail from various phone numbers on over two hundred occasions.

66. On some occasions, Blissick's phone would not ring, and she would simply receive a voicemail from an unknown number, which is known as a "ringless voicemail."

67. On other occasions, her phone would ring, and when she did not answer, the Better Rise Capital Defendants left a voicemail.

68. A non-exhaustive list of occasions on which Blissick received a voicemail and/or call from the Better Rise Capital Defendants are attached as Exhibit B.

69. On January 30, 2026, in order to identify the party responsible for calling her, McBride called the (855) 768-6335 number left in the voicemail, and feigned interest in The Better Rise Capital Defendants' services.

70. McBride was connected with an overseas agent who asked him a series of questions regarding Blissick's and his credit history before transferring him to a domestic agent who asked him a similar series of questions. McBride then inquired into the identity of the company that was offering him and his wife lending services, to which the agent responded by identifying Better Rise Capital, located in Irvine, California.

71. Blissick was alarmed to see that the calls came from the same conglomerate of companies as the tax-related calls her husband was receiving.

72. Better Rise Capital is owned by Better Companies, LLC, which owns Better Tax relief. Matt Nia is the principal of all three entities.

73. On February 2, 2026, McBride directly called back the number that had most recently called his wife, and went through a substantially identical process as on January 30, 2026, with a domestic agent again identifying Better Rise Capital.

74. Blissick was able to tell that the voicemails were pre-recorded due to the impersonal and scripted cadence, tone, and language of the messages.

75. Furthermore, Blissick was able to tell that one party was responsible for all voicemails and calls from the fact that on all occasions, the voicemails have consisted of the exact same recording, with an identical script, voice, and delivery.

76. Based on the foregoing, Blissick understands the Better Rise Capital Defendants were responsible for all voicemails and calls.

77. These calls and voicemails were not made for "emergency purposes," but rather for solicitation purposes.

78. Blissick did not have any pre-existing business relationship with the Better Rise Capital Defendants, and was not interested in borrowing money.

79. Blissick did not provide the Better Rise Capital Defendants with her prior express consent to be contacted for solicitation purposes or to receive pre-recorded voicemails.

80. The Better Rise Capital Defendants knew or should have known that their calls were unwanted, as Blissick's phone was registered on the National Do-Not-Call Registry.

81. Furthermore, the Better Rise Capital Defendants took measures to prevent their calls from being blocked by calling from several different numbers.

82. As a result of the foregoing, Blissick experienced frustration, annoyance, irritation and a sense that her privacy had been invaded by the Better Rise Capital Defendants.

**DIRECT AND VICARIOUS LIABILITY**

83. Without the benefit of discovery, Plaintiffs understand and therefore allege Defendants directly placed the calls at issue.

84. However, if some or all of the calls were placed by third-party/parties on behalf of Defendants, in the alternative, Defendants are vicariously liable for those calls.

85. On May 9, 2013, the FCC determined that telemarketers like Defendants cannot avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

86. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

87. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

88. If Defendants directly placed the calls at issue to Plaintiffs and the putative class members, Defendants are directly liable for the placing of those calls.

89. However, Defendants may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

90. If Defendants did not directly send the calls and the putative class members, Defendants' third-party telemarketers had actual and/or apparent authority to act on behalf of Defendants.

91. Likewise, on information and belief, Defendants also ratified their agents' violations of the TCPA by accepting proceeds from sales initiated by unlawful telemarketing communications.

92. Defendants controlled or had the right to control the marketing activities of those acting on their behalf.

93. Defendants acted as principals to telemarketing agent(s) who were acting on their behalf.

94. Defendants are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

95. For the count identified below, if Defendants directly sent the calls at issue, they are directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendants' behalf, Defendants are vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

96. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

97. Plaintiffs seek to represent the following classes:

> **National Do-Not-Call Registry (NDNC) Class:** All persons in the United States who received two or more telemarketing calls or voicemails to their telephone number within any 12-month period, while such number was registered with the National Do-Not-Call Registry for over thirty days, which were placed by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class; and

> **Pre-Recorded Voice (PRV) Class:** All persons in the United States who received one or more calls or voicemails to their cellular or residential telephone numbers which were placed by or on behalf of Defendants, where a pre-recorded or artificial voice was used, from four years prior to the date of this complaint through the date the Court certifies the class.

98. Excluded from the Classes are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiffs reserve the right to amend or modify the class definitions consistent with the record.

99. The putative class members' identities are readily ascertainable from Defendants' records or records within Defendants' control.

100. Plaintiffs' claims are typical of the class members, as all are based on the substantially similar facts and the same legal theories.

101. Plaintiffs will fairly and adequately protect the interests of the Classes defined in this complaint. Plaintiffs will fairly and adequately protect the interests of the class members insofar and Plaintiffs have no interests that are averse to the absent class members. Plaintiffs are committed to vigorously litigating this matter.

102. Plaintiffs have retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiffs nor their attorneys have any interests which might cause them not to vigorously pursue this action.

103. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

104. Class Members are so numerous that the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

105. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

a. Whether Defendants placed prerecorded voice calls to Plaintiffs and the class members;

b. Whether Defendants scrub or otherwise consult the federal Do Not Call registry before calling numbers;

c. Whether the calls and voicemails were "solicitations" as defined by 47 U.S.C. § 227(a)(4);

d. Whether Defendants employ proper mechanisms to obtain consumers' prior express consent before sending marketing messages and/or making telemarketing calls;

e. Whether Defendants employ proper mechanisms to obtain consumers' prior express consent before placing pre-recorded voice messages;

f. Whether Defendants' conduct violates 47 U.S.C. § 227 and the corresponding rules and regulations implementing the TCPA; and

g. Whether Plaintiffs and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

106. Plaintiffs and the putative class members have claims arising out of Defendants' uniform course of conduct, namely improperly placing solicitation calls to Plaintiffs and the putative class members.

107. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all

parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments.

108. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

109. Based on discovery and further investigation, Plaintiffs may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

110. Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiffs and Class members for which they have no adequate remedy at law.

**COUNT I**
**VIOLATION OF NATIONAL DO-NOT-CALL RULES**
**47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**
**(*McBride v. Better Tax Relief, Better Companies and Nia*)**

111. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

112. McBride brings this Count individually and on behalf of all others similarly situated in the NDNC Class.

113. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii), (e).

114. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

115. In addition, the TCPA allows the Court to enjoin the Better Tax Relief Defendants' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

116. By calling and leaving voicemails to McBride and the putative class members after their numbers were registered on the National Do Not Call Registry, the Better Tax Relief Defendants violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

117. On information and belief, the Better Tax Relief Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. The Better Tax Relief Defendants violated 47 C.F.R. § 64.1200(c) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as McBride and the other NDNC Class members. The Better Tax Relief Defendants violated 47 C.F.R. § 64.1200(c).

118. The Better Tax Relief Defendants' violations are knowing and willful because the Better Tax Relief Defendants knew or should have known that McBride and NDNC Class members had their numbers registered on the Do Not Call Registry.

119. The acts and/or omissions of the Better Tax Relief Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

120. McBride and NDNC Class members are entitled to damages of $500.00 per violation for each call placed by Defendants and up to $1,500.00 per violation if the Court finds the Better Tax Relief Defendants willfully violated the TCPA.

121. McBride, individually, and on behalf of the other NDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against the Better Tax Relief Defendants to stop their violations of the TCPA.

**COUNT II**
**PRERECORDED MESSAGES IN CALLS TO CELL PHONES**
**47 U.S.C. § 227(b)(1)**
**(*McBride v. Better Tax Relief, Better Companies and Nia*)**

122. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

123. The TCPA provides, in part that:

> "It shall be unlawful … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice (…) to any telephone number assigned to a (…) cellular telephone (…)"

47 U.S.C. § 227(b)(1)(A)(iii).

124. Prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

125. The term "prior express written consent" means:

> "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using (…) an artificial or prerecorded voice (…) and the agreement must identify the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

47 C.F.R. § 64.1200(f)(9).

126. By placing prerecorded voice calls to McBride and the putative class members without having valid "prior express written consent", the Better Tax Relief Defendants violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

127. The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

128. In addition, the TCPA allows the Court to enjoin the Better Tax Relief Defendants' violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

129. The Better Tax Relief Defendants and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to McBride and the putative class members' cell phones.

130. McBride and the putative class members are entitled to damages of $500 per violation for each prerecorded voice call placed by Defendants and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that the Better Tax Relief Defendants or those acting on its behalf willfully violated the TCPA.

**COUNT III**
**VIOLATION OF NATIONAL DO-NOT-CALL RULES**
**47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**
***(Blissick v. Better Rise Capital, Better Companies and Nia)***

131. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

132. Blissick brings this Count individually and on behalf of all others similarly situated in the NDNC Class.

133. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii), (e).

134. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

135. In addition, the TCPA allows the Court to enjoin the Better Rise Capital Defendants' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

136. By calling and leaving voicemails to Blissick and the putative class members after their numbers were registered on the National Do Not Call Registry, the Better Rise Capital Defendants violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

137. On information and belief, the Better Rise Capital Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their

telemarketing campaigns alleged above. The Better Rise Capital Defendants violated 47 C.F.R. § 64.1200(c) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Blissick and the other NDNC Class members. The Better Rise Capital Defendants violated 47 C.F.R. § 64.1200(c).

138. Defendants' violations are knowing and willful because the Better Rise Capital Defendants knew or should have known that Blissick and NDNC Class members had their numbers registered on the Do Not Call Registry.

139. The acts and/or omissions of the Better Rise Capital Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

140. Blissick and NDNC Class members are entitled to damages of $500.00 per violation for each call placed by Defendants and up to $1,500.00 per violation if the Court finds the Better Rise Capital Defendants willfully violated the TCPA.

141. Blissick, individually, and on behalf of the other NDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

**COUNT IV**
**PRERECORDED MESSAGES IN CALLS TO CELL PHONES**
**47 U.S.C. § 227(b)(1)**
**(*Blissick v. Better Rise Capital, Better Companies and Nia*)**

142. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

143. The TCPA provides, in part that:

> "It shall be unlawful … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice (…) to any telephone number assigned to a (…) cellular telephone (…)"

47 U.S.C. § 227(b)(1)(A)(iii).

144. Prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

145. The term "prior express written consent" means:

> "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using (…) an artificial or prerecorded voice (…) and the agreement must identify the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

47 C.F.R. § 64.1200(f)(9).

146. By placing prerecorded voice calls to Blissick and the putative class members without having valid "prior express written consent", the Better Rise Capital Defendants violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

147. The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

148. In addition, the TCPA allows the Court to enjoin the Better Rise Capital Defendants' violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

149. The Better Rise Capital Defendants and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to Blissick and the putative class members' cell phones.

150. Blissick and the putative class members are entitled to damages of $500 per violation for each prerecorded voice call placed by the Better Rise Capital Defendants and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if

the Court finds that the Better Rise Capital Defendants or those acting on its behalf willfully violated the TCPA.

**PRAYER FOR JUDGMENT**

WHEREFORE, Plaintiffs, Brian McBride and Deborah Blissick, individually, and/or behalf of all other similarly situated, requests the Court grant the following relief against Defendants Better Tax Relief, LLC, Better Rise Capital LLC, Better Companies LLC, and Matt Nia as follows:

a. Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiffs as the class representatives for the NDNC Class and the PRV Class;

b. Enter an order appointing Kimmel & Silverman, P.C. as class counsel for the NDNC Class and the PRV Class;

c. Enter judgment in favor of Plaintiffs and the NDNC Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(c) consistent with proof at trial;

d. Enter judgment in favor of Plaintiffs and the PRV Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(b) consistent with proof at trial;

e. Award Plaintiffs, the NDNC Class, and the PRV Class such further and other relief the Court deems just and appropriate.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,

KIMMEL & SILVERMAN, PC

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (NJ 039312011)
30 East Butler Ave.
Ambler, Pennsylvania 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817
jginsburg@creditlaw.com
teamkimmel@creditlaw.com

*Attorneys for Plaintiffs, individually, and on behalf of all others similarly situated*