KIMMEL & SILVERMAN, PC
Jacob U. Ginsburg, Esq. (NJ 039312011)
30 East Butler Ave.
Ambler, Pennsylvania 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VINCAGE**

| | |
|---|---|
| **DEBORAH BLISSICK**, *individually and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>**BETTER RISE CAPITAL LLC, BETTER COMPANIES LLC and MATT NIA,**<br><br>*Defendants.* | Case No.: 1:26-cv-02258<br><br>**FIRST AMENDED COMPLAINT**<br><br>**Jury Trial Demanded** |

**FIRST AMENDED CLASS-ACTION COMPLAINT**

Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff Deborah Blissick ("Blissick" or "Plaintiff"), individually and on behalf of all others similarly situated, files this First Amended Class-Action Complaint against Defendants Better Rise Capital, LLC ("Better Rise Capital") Better Companies, LLC ("Better Companies") and Matt Nia ("Nia", collectively "Defendants"). In support thereof, Plaintiff states as follows:

**NATURE OF THE CASE**

1. Plaintiff brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful

actions of Defendants. Defendants violated Plaintiff and the putative class-members' rights by making two or more solicitation calls to residential subscribers whose numbers were registered on the Do Not Call Registry, and by placing ringless, pre-recorded voicemails to consumers without their prior express consent. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. and the TCPA's corresponding regulations promulgated by the Federal Communications Commission ("FCC") at 47 C.F.R. § 64.1200 *et seq.*

**BACKGROUND ON THE TCPA**

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights – specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) et seq., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did

not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 30 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3).

8. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the Federal Communications Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2021 alone, there were over five million complaints from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry* (Jan. 5, 2022), https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, The Wall Street Journal, March 28, 2019,

https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. Plaintiff received the unwanted telemarketing calls at issue in this lawsuit while physically present in New Jersey, the state in which she resides.

13. Defendants knew Plaintiff was a resident of New Jersey, as they acquired some of her personal data, which identified her as a New Jersey resident.

14. Accordingly, Defendants knowingly and purposefully availed themselves to the State of New Jersey by calling Plaintiff, knowing she was a New Jersey resident.

15. Furthermore, Defendants placed numerous calls from New Jersey phone numbers, including but not limited to (609) 849-3600; (856) 795-1560; and (551) 600-8140.

16. Therefore, Defendants placed many of the telemarketing calls from New Jersey.

17. A substantial part of the events and omissions giving rise to this claim occurred within this District.

18. Accordingly, personal jurisdiction exists and venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

19. Plaintiff Deborah Blissick is an individual who resides in Linwood, New Jersey.

20. Plaintiff are each a "person" as that term is defined by 47 U.S.C. §153(39).

21. Defendant Better Rise Capital LLC is a California company with its principal office address at 2525 Main Street #410, Irvine, California 92614.

22. Defendant Better Companies LLC is a California company with its principal office address at 2525 Main Street #500, Irvine, California 92614.

23. Upon information and belief, Better Rise Capital, along with former Defendant Better Tax Relief, LLC ("Better Tax Relief"), is a wholly-owned subsidiary of Better Companies. Better Companies and Better Rise Capital have common employees, officers and directors. The business operations of the companies overlap without distinction and therefore, the three companies worked in concert as a joint enterprise.

24. Defendant Matt Nia is an individual who resides in Newport Beach, California and is the co-founder and co-owner of the Better Companies.

25. Upon information and belief, Mr. Nia personally manages and directs the marketing activities of Better Rise and its parent and sister companies.

26. Defendants are each a "person" as that term is defined by 47 U.S.C. §153(39).

27. Defendants acted through their employees, agents, vendors, contractors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees and representatives.

**DEFENDANTS' TELEMARKETING OPERATIONS AND NIA'S PERSONAL PARTICIPATION IN THE TELEMARKETING CAMPAIGNS**

28. Better Companies owns Defendant Better Rise Capital and former Defendant Better Tax Relief, which have the same employees, same principals, same marketing strategies and hold themselves out to the public as a joint enterprise. A screenshot from the Better Companies website is copied below:




29. Better Companies and its wholly-owned subsidiary Better Rise Capital, as well as former Defendant Better Tax Relief are owned and operated by Matt Nia.

30. Defendants have gained notoriety for prolific telemarketing, including calling individuals on the Do-Not-Call Registry and without consent.

31. For instance, on TrustPilot, while Better Rise certainly has its share of positive reviews, there are also numerous one-star reviews which revolve primarily around Better Rise's prolific and unsolicited telemarketing campaigns. The following reviews were left just in the two months before this Amended Complaint was filed:

> "Company will NOT stop spam calling. They constantly call and leave a voicemail stating that they just need to verify a couple remaining items to issue a final approval and release funds. In reality, they don't have ANY prequalifying, they don't have any info on your business at all, they're just cold call phishing for information."

> "They don't remove you from their call list, they just claim to but somehow you still get another call later in the day."

> "Spam callers. Call 3-4 times a day and fill up my voicemail in a week.
> I have contacted the Attorney General for my state and for California, and I suggest everyone else do the same. It is the only way to stop them."
>
> "This company won't stop spam calling me, anywhere from 1 to 10 calls per day. How is this legal? How can a company call you hundreds of times when you're on the do not call registry?"

*See* https://www.trustpilot.com/review/betterrisecapital.com?stars=1 (last visited June 12, 2026).

32. Mr. Nia oversaw and managed the telemarketing operations carried out by the current and former Defendants.

33. Nia's personal participation and overseeing of telemarketing operations was demonstrated through the events of January and February of 2026.

34. Namely, Blissick and her husband, former Plaintiff Brian McBride (who will be pursuing his claim in arbitration) received hundreds of calls from Defendants, which are listed and described in the original Complaint.

35. After both Blissick and McBride made numerous futile requests that Defendants' telemarketing calls stop, Mr. McBride involved state and federal authorities.

36. After Mr. McBride contacted government authorities regarding the telemarketing harassment carried out by the Better Companies and specifically identified Mr. Nia as being involved, Mr. Nia finally saw to it that the calls to Blissick and McBride stop.

37. Accordingly, Mr. Nia has the ability to determine who does and does not receive telemarketing calls from Better Companies and Better Rise Capital.

38. Better Companies and Better Rise Capital acted as a joint enterprise at all times relevant, and Mr. Nia personally participated in the telemarketing campaign.

**FACTUAL ALLEGATIONS AS TO BLISSICK**

39. Plaintiff Deborah Blissick resides in Linwood, New Jersey.

40. At all times relevant hereto, Blissick owned a cell phone, the number for which was (610) XXX-5574.

41. At all times relevant hereto, Blissick used that number primarily for personal and residential purposes, such as speaking with friends and family.

42. Blissick registered that cell phone number on the National Do Not Call Registry on April 16, 2005 in order to obtain solitude from invasive and irritating telemarketing calls.

43. Beginning in January of 2025, Defendants began a telemarketing campaign to Blissick, sending unsolicited and unconsented calls and voicemails promoting Defendants' money lending services which Blissick did not want or need.

44. Between then and the present date, Blissick has received the same pre-recorded voicemail from various phone numbers on over two hundred occasions.

45. On some occasions, Blissick's phone would not ring, and she would simply receive a voicemail from an unknown number, which is known as a "ringless voicemail."

46. On other occasions, her phone would ring, and when she did not answer, Defendants left a voicemail.

47. On January 3, 2025, Blissick received a call from the number (484) 202-5072. She then received a voicemail which stated as follows:

> "This is Marina Tessio, I'm the credit analyst working on your approval and your business profile. I see that you had inquired before regarding a line of credit or business loans, and while it didn't move forward at the time, a few things have changed this year with rates and underwriting. If you're still interested in reviewing your options you can press 1 now or give us a call back. Today is Tuesday, I will be at my desk until 6pm. You can reach me at (855) 768-6335, I'll be happy to go over your terms with you, looking forward to speaking with you."

48. A non-exhaustive list of occasions on which Blissick received a voicemail and/or call from Defendants are attached as Exhibit A.

49. On January 30, 2026, in order to identify the party responsible for calling her, Blissick's husband, former Plaintiff Brian McBride ("McBride") called the aforementioned (855) 768-6335 number left in the voicemail, and feigned interest in Defendants' services.

50. McBride was connected with a call center agent who asked him a series of questions regarding Blissick's and his credit history before transferring him to another agent who asked him a similar series of questions. McBride then inquired into the identity of the company that was offering him and his wife lending services, to which the agent responded by identifying Better Rise Capital, located in Irvine, California.

51. Better Rise Capital is owned by Better Companies, LLC. Matt Nia is the principal of those entities.

52. On February 2, 2026, McBride directly called back the number that had most recently called his wife, and went through a substantially identical process as on January 30, 2026, with the representative identifying Better Rise Capital.

53. Blissick was able to tell that the voicemails were pre-recorded due to the impersonal and scripted cadence, tone, and language of the messages.

54. Furthermore, Blissick was able to tell that one party was responsible for all voicemails and calls from the fact that on all occasions, the voicemails have consisted of the exact same recording, with an identical script, voice, and delivery as the two aforementioned calls where Better Rise Capital's involvement was confirmed.

55. Moreover, in or around January and February of 2026, McBride notified law enforcement and other government authorities of the Better Companies (including the current and former Defendants) telemarketing harassment.

56. Nia was personally identified by McBride as being involved.

57. Thereafter, Nia finally saw to it that all calls to McBride and Blissick stop.

58. Accordingly, the Better Companies acted as a joint enterprise and Nia personally participated in the campaign, as demonstrated by his ability to determine who does and does not receive telemarketing calls.

59. These calls and voicemails were not made for "emergency purposes," but rather for solicitation purposes.

60. Blissick did not have any pre-existing business relationship with Defendants, and was not interested in borrowing money.

61. Blissick did not provide Defendants with her prior express consent to be contacted for solicitation purposes or to receive pre-recorded voicemails.

62. Defendants knew or should have known that their calls were unwanted, as Blissick's phone was registered on the National Do-Not-Call Registry.

63. Furthermore, Defendants took measures to prevent their calls from being blocked by calling from several different numbers.

64. As a result of the foregoing, Blissick experienced frustration, annoyance, irritation and a sense that her privacy had been invaded by Defendants.

**DIRECT AND VICARIOUS LIABILITY**

65. Without the benefit of discovery, Plaintiff understands and therefore alleges Defendants directly placed the calls at issue.

66. However, if some or all of the calls were placed by third-party/parties on behalf of Defendants, in the alternative, Defendants are vicariously liable for those calls.

67. On May 9, 2013, the FCC determined that telemarketers like Defendants cannot avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

68. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

69. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

70. If Defendants directly placed the calls at issue to Plaintiff and the putative class members, Defendants are directly liable for the placing of those calls.

71. However, Defendants may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

72. If Defendants did not directly send the calls and the putative class members, Defendants' third-party telemarketers had actual and/or apparent authority to act on behalf of Defendants.

73. Likewise, on information and belief, Defendants also ratified their agents' violations of the TCPA by accepting proceeds from sales initiated by unlawful telemarketing communications.

74. Defendants controlled or had the right to control the marketing activities of those acting on their behalf.

75. Defendants acted as principals to telemarketing agent(s) who were acting on their behalf.

76. Defendants are not permitted under the law to outsource and contract their way out of liability by directing and benefitting from their agents' TCPA violations.

77. For the count identified below, if Defendants directly sent the calls at issue, they are directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendants' behalf, Defendants are vicariously liable for those unlawful communications.

## CLASS ALLEGATIONS

78. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiff brings this lawsuit as a class action on behalf of themselves and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

79. Plaintiff seeks to represent the following classes:

> **National Do-Not-Call Registry (NDNC) Class:** All persons in the United States who received two or more telemarketing calls or voicemails to their telephone number within any 12-month period, while such number was registered with the National Do-Not-Call Registry for over thirty days, which were placed by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class; and

> **Pre-Recorded Voice (PRV) Class:** All persons in the United States who received one or more calls or voicemails to their cellular or residential telephone numbers which were placed by or on behalf of Defendants, where a pre-recorded or artificial voice was used, from four years prior to the date of this complaint through the date the Court certifies the class.

80. Excluded from the Classes are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserve the right to amend or modify the class definitions consistent with the record.

81. The putative class members' identities are readily ascertainable from Defendants' records or records within Defendants' control.

82. Plaintiff's claims are typical of the class members, as all are based on the substantially similar facts and the same legal theories.

83. Plaintiff will fairly and adequately protect the interests of the Classes defined in this complaint. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff have no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter.

84. Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them not to vigorously pursue this action.

85. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

86. Class Members are so numerous that the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

87. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

a. Whether Defendants placed prerecorded voice calls to Plaintiff and the class members;

b. Whether Defendants scrub or otherwise consult the federal Do Not Call registry before calling numbers;

c. Whether the calls and voicemails were "solicitations" as defined by 47 U.S.C. § 227(a)(4);

d. Whether Defendants employ proper mechanisms to obtain consumers' prior express consent before sending marketing messages and/or making telemarketing calls;

e. Whether Defendants employ proper mechanisms to obtain consumers' prior express consent before placing pre-recorded voice messages;

f. Whether Defendants' conduct violates 47 U.S.C. § 227 and the corresponding rules and regulations implementing the TCPA; and

g. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

88. Plaintiff and the putative class members have claims arising out of Defendants' uniform course of conduct, namely improperly placing solicitation calls to Plaintiff and the putative class members.

89. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all

parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments.

90. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

91. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

92. Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

**COUNT I**
**VIOLATION OF NATIONAL DO-NOT-CALL RULES**
**47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)**

93. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

94. Plaintiff brings this Count individually and on behalf of all others similarly situated in the NDNC Class.

95. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii), (e).

96. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

97. In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

98. By calling and leaving voicemails to Plaintiff and the putative class members after their numbers were registered on the National Do Not Call Registry, Defendants violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

99. On information and belief, Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other NDNC Class members. Defendants violated 47 C.F.R. § 64.1200(c).

100. Defendants' violations are knowing and willful because Defendants knew or should have known that Plaintiff and NDNC Class members had their numbers registered on the Do Not Call Registry.

101. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

102. Plaintiff and NDNC Class members are entitled to damages of $500.00 per violation for each call placed by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

103. Plaintiff, individually, and on behalf of the other NDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

## <u>COUNT II</u>
## PRERECORDED MESSAGES IN CALLS TO CELL PHONES
## 47 U.S.C. § 227(b)(1)

104. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

105. The TCPA provides, in part that:

> "It shall be unlawful … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice (…) to any telephone number assigned to a (…) cellular telephone (…)"

47 U.S.C. § 227(b)(1)(A)(iii).

106. Prerecorded voice calls that are placed for solicitation purposes cannot be placed without first obtaining the recipient's "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

107. The term "prior express written consent" means:

> "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called or texted advertisements or telemarketing messages using (…) an artificial or prerecorded voice (…) and the agreement must identify the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

47 C.F.R. § 64.1200(f)(9).

108. By placing prerecorded voice calls to Plaintiff and the putative class members without having valid "prior express written consent", Defendants violated the TCPA, 47 U.S.C. § 227(b)(1), and the TCPA's corresponding regulations.

109. The penalty for each call placed in violation of the TCPA's restrictions on placing such prerecorded voice calls is $500 and up to $1,500 per call, if the violation is determined to be willful. *See* 47 U.S.C. § 227(b)(3).

110. In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA. *See* 47 U.S.C. §§ 227(b)(3)(A).

111. Defendants and/or those acting on their behalf willfully violated the TCPA when placing prerecorded voice calls to Plaintiff and the putative class members' cell phones.

112. Plaintiff and the putative class members are entitled to damages of $500 per violation for each prerecorded voice call placed by Defendants and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendants or those acting on its behalf willfully violated the TCPA.

**PRAYER FOR JUDGMENT**

WHEREFORE, Plaintiff, Deborah Blissick, individually and on behalf of all other similarly situated, requests the Court grant the following relief against Defendants Better Rise Capital LLC, Better Companies LLC, and Matt Nia as follows:

a. Enter an order against Defendants pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representatives for the NDNC Class and the PRV Class;

b. Enter an order appointing Kimmel & Silverman, P.C. as class counsel for the NDNC Class and the PRV Class;

c. Enter judgment in favor of Plaintiff and the NDNC Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(c) consistent with proof at trial;

d. Enter judgment in favor of Plaintiff and the PRV Class for all damages available under the TCPA, including actual and statutory damages per violation of 47 U.S.C. § 227(b) consistent with proof at trial;

e. Award Plaintiff, the NDNC Class, and the PRV Class such further and other relief the Court deems just and appropriate.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

KIMMEL & SILVERMAN, PC

*<u>/s/ Jacob U. Ginsburg</u>*
Jacob U. Ginsburg, Esq. (NJ 039312011)
30 East Butler Ave.
Ambler, Pennsylvania 19002
Telephone: (267) 468-5374
Facsimile: 215-540-8817
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiff, individually, and on behalf of all others similarly situated*